IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TAMARA BLANCHETTE, on behalf of herself and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>ELISABETH DEVOS, *in her official capacity as Secretary of Education*, and UNITED STATES DEPARTMENT OF EDUCATION,<br><br>*Defendants*. | Case No. 19-cv-1775 (RC) |

**PLAINTIFF'S [PROPOSED] SURREPLY IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff Tamara Blanchette's ("Plaintiff") opposition [Dkt. 13] demonstrates that Defendants Secretary of Education Elisabeth DeVos ("Secretary") and United States Department of Education ("Department") (collectively, "Defendants") unlawfully certified her debt as legally enforceable, despite evidence in their possession that she was the victim of fraud while enrolled as a student at the Minnesota School of Business ("MSB"). In their reply, Defendants raise new matters that warrant a brief response. First, Defendants claim—in direct contradiction to what they told Congress—that there is no pending group borrower defense claim on behalf of students who attended MSB and Globe University ("Globe"), MSB's sister school. Second, Defendants cite cases not relied upon in their opening brief as support for their argument that notice under the Debt Collection Improvement Act ("DCIA") complies with the Constitution's Due Process Clause. Neither argument defeats Plaintiff's claims.

1

**1. Despite Defendants' contention to the contrary, the Department has a pending group borrower defense claim on behalf of MSB and Globe students.**

In her opposition brief and accompanying request for judicial notice [Dkt. 12], Plaintiff introduced evidence that Defendants have a pending group borrower defense claim on behalf of MSB and Globe students. Defendants should have considered this claim prior to certifying Plaintiff's debt as legally enforceable. Instead, Defendants call into question both the claim's existence and their legal obligation to consider it.

As an initial matter, Defendants contest whether the attachment to a letter from a group of United States senators to Secretary DeVos—seeking information about "the status of each borrower defense group application submitted by State attorneys general"—came "from" the Department. *See* Defs.' Reply at 3. But the letter itself makes clear that the Department submitted this attachment in response to "Questions for the Record" that followed a hearing before the Senate Appropriations Subcommittee on Labor, Health and Human Services, Education, and Related Agencies on the Department's Fiscal Year 2020 budget request. *See* Pl.'s Request for Judicial Notice, Ex. A at 1 n.2. Defendants cannot possibly be suggesting that the Department has no ownership over its responses to official Congressional inquiries.

In addition, Defendants argue that the "currently operative borrower defense regulation"—*i.e.*, the 2016 Borrower Defense Rule—"makes clear" that only the Secretary may initiate a group borrower defense claim. Defs.' Reply at 3. But that regulation was not in effect when the Minnesota Attorney General communicated with the Department about the fraud perpetrated on MSB and Globe students. *Compare* Pl.'s Request for Judicial Notice, Ex. A at *5 (noting that this communication took place on June 6, 2016) *with* U.S. Dep't of Educ., Final Rule, 81 Fed. Reg. 75,926, 75,926 (Nov. 1, 2016) (stating that the 2016 Borrower Defense Rule became "effective July 1, 2017"). In fact, the borrower defense regulation that *was* operative at

the time—the 1995 Borrower Defense Rule—does not specify how the Department should handle group claims. *See* 34 C.F.R. § 685.206(c) (effective July 1, 1995). As a matter of practice, however, the Department has allowed state attorneys general to submit borrower defense claims on behalf of groups of students, approving some of those claims. *See, e.g.*, U.S. Dep't of Educ., *American Career Institute Borrowers to Receive Automatic Group Relief for Federal Student Loans* (Jan. 13, 2017), https://www.ed.gov/news/press-releases/american-career-institute-borrowers-receive-automatic-group-relief-federal-student-loans. Defendants cannot ignore a group claim submitted prior to the 2016 Borrower Defense Rule's effective date and Secretary Devos's tenure.

Finally, Defendants assert that, even "[a]ssuming . . . that Attorney General Swanson's submission constitutes a 'currently pending' group borrower defense claim, the Department is under no obligation to consider it." Defs.' Reply at 4 n.1. A federal court explicitly held otherwise. *See Williams v. Devos*, 2018 WL 5281741, at *14 (D. Mass. 2018) ("[T]he Secretary "acted arbitrarily and capriciously by (1) ignoring or refusing to consider the [group borrower defense claim] prior to certifying the plaintiffs' loans for tax refund offsets; (2) failing to determine whether [the plaintiffs] . . . had established valid borrower defenses as defined in [the Department's] regulations; and (3) failing to issue a reasoned decision on either of these points."). As the Department itself admits, "its own regulations" now obligate the Department "to cease collection activity on Plaintiff's loans." *See* Defs.' Reply at 4.

Defendants' failure to consider the group borrower defense claim, along with other evidence that Plaintiff had been defrauded, establishes that their certification of the legal enforceability of Plaintiff's debt was arbitrary and capricious. At a minimum, the parties' dispute

over this group claim, along with the absence of the administrative record, mean that it would be premature to decide the motion to dismiss in Defendants' favor.

### 2. Plaintiff's due process challenge to the content of the notice she received is not foreclosed by Defendants' non-binding authority.

In an attempt to defeat Plaintiff's due process claim, Defendants rely, for the first time, on *Games v. Cavazo*, 737 F. Supp. 1368 (D. Del. 1990).[1] In *Games*, the plaintiff challenged, as relevant here, the defendants' failure to provide a list of possible defenses in their notice of proposed tax refund offset. *Id.* at 1374. "At the outset," the Court held that the plaintiff lacked standing to challenge the constitutional sufficiency of the notice. *Id.* at 1375. Assuming the plaintiff had standing, the Court proceeded to consider the plaintiff's list of possible defenses. *Id.* at 1376 n.3 (listing defenses such as deferment, statute of limitations, bankruptcy discharge, "failure of the educational institution to provide the educational or training program sought," failure of the lending institution to attempt to collect a debt as required by regulations, and failure to properly assign the obligation to the Department). The Court found that these defenses "boil down to the single defense listed in the [notice]: namely, that the debt is not past-due, legally enforceable debt." *Id.* at 1376. As a result, the Court held that a "non-exhaustive list of defenses" was not constitutionally required. *Id.*

Importantly, the *Games* plaintiff did not propose the inclusion of borrower defense to repayment. Nor could he have. At the time of the Court's decision, the Holder Rule—which

---

[1] Defendants also cite two additional cases, but neither are persuasive. *See Toney v. Burris*, 881 F.2d 450, 453–54 (7th Cir. 1989) (per curiam) (addressing a § 1983 challenge to the Illinois statutory and regulatory scheme for seizing a state loan borrower's wages and holding that, given that a state agency already provides debtors with notice and a pre-deprivation hearing, due process requires no additional procedures for the state comptroller, who effectuates the offset); *McClelland v. Massinga*, 600 F. Supp. 558, 565–66 (D. Md. 1984) (addressing a § 1983 challenge to Maryland's tax refund offset system for unpaid child support and holding that due process "does not require the state to anticipate and list *all* possible defenses" to child support arrearages, given "the factual nature" of those disputes) (emphasis added). Plaintiff has not asked this Court to require Defendants to list *all* possible defenses to the collection of defaulted student loan debt. Instead, she seeks the permanent addition of one particular defense: borrower defense to repayment.

4

ensures that consumers are not forced to repay loans to a financer following a seller's misconduct, *see* Fed. Trade Comm'n, Final Rule, 40 Fed. Reg. 53,506, 53,509 (Nov. 18, 1975) (codified at 16 C.F.R. Pt. 433)—was not yet adopted as part of the Federal Family Education Loan ("FFEL") Program's *or* the William D. Ford Federal Direct Loan ("Direct") Program's promissory notes. *See, e.g.*, the 2016 Borrower Defense Rule, 81 Fed. Reg. at 75,398 n.6. It also had not yet been codified in regulations. *See* 34 C.F.R. §§ 682.209(g), 685.206(c). For that reason, the Court's analysis did not and could not have included a discussion of "the likelihood that the debtor would be aware" of this type of defense. *Games*, 737 F. Supp. at 1376. If it had, the Court may have agreed that borrower defense is "more like the exemptions . . . in *Finberg* . . . and should thus be listed in the [notice]." *Id.*

Since that time, Defendants have acknowledged the importance of including a list of possible defenses in their notice of proposed offset, including some of those proposed in *Games*. Plaintiff Blanchette's notice included four main objections, which in turn elaborated upon possible reasons a borrower's loan might not be collectable. *See* Pl.'s Opp. at 21–22 (listing objections such as bankruptcy discharge, loan cancellation due to qualifying service, closed school discharge, death, total and permanent disability, and false certification discharge). Notably absent from this list, however, was borrower defense to repayment, a major avenue for challenging tax refund offsets. The exclusion of this defense from a list that already includes most other major defenses is arguably more prone to confusing borrowers than if no list were provided at all. Perhaps to correct this omission, Defendants' notice now includes a specific reference to borrower defense to repayment. *See id.* at 26 (citing Def.'s Status Report [Dkt. 101] at 2, Williams, 2018 WL 5281741 (D. Mass. Dec. 20, 2018)). But that fact does nothing to remedy the procedural due process violation in Plaintiff's case.

## CONCLUSION

For the reasons stated herein, the Court should deny Defendants' motion to dismiss.

Respectfully Submitted,

/s/ *Robyn K. Bitner*

ROBYN K. BITNER
D.C. Bar No. 1617036

ALEXANDER S. ELSON
D.C. Bar No. 1602459

ERIC ROTHSCHILD
D.C. Bar No. 1048877

National Student Legal Defense Network
1015 15th Street N.W., Suite 600
Washington, D.C. 20005
robyn@defendstudents.org
alex@defendstudents.org
eric@defendstudents.org
(202) 734-7495

*Counsel for Plaintiff Tamara Blanchette*

Dated: November 21, 2019