# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| TAMARA BLANCHETTE, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 19-1775 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 10, 12, 15 |
| | : | | |
| ELISABETH DEVOS, in her official | : | | |
| capacity as U.S. Secretary of | : | | |
| Education, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### GRANTING DEFENDANTS' MOTION TO DISMISS

## I.  INTRODUCTION

As alleged in the complaint, Plaintiff Tamara Blanchett took out federal student loans to finance her education at the Minnesota School of Business ("MSB").  MSB staff told her that if she completed an associate degree in criminal justice, she would be able to work as a probation officer in Minnesota and that her credits would easily transfer to other institutions.  These representations were not true.  With thousands of dollars in student debt, Plaintiff eventually found herself unable to keep up with her monthly payments and she defaulted.  Defendants, the Secretary of Education ("Secretary") and the Department of Education ("Education"), sought to collect on Plaintiff's debt by referring it to the Department of Treasury's ("Treasury") Treasury Offset Program ("TOP"), which allows federal agencies to collect past-due, legally enforceable debts through tax refund offsets.  Plaintiff filed this lawsuit alleging that Defendants' actions violate the Administrative Procedure Act ("APA") and her rights to due process.  She claims that Defendants knew about the fraudulent activities of MSB and failed to consider them before

certifying that her debt was legally enforceable.  She also claims that Defendants should have provided notice of her right to challenge collection efforts based on the fraudulent actions of MSB.  Defendants have moved to dismiss and argue that Plaintiff fails to state a claim.  For the reasons set forth below, the Court grants Defendants' motion but will allow Plaintiff to amend her complaint.

## II.  BACKGROUND

### A.  Statutory and Regulatory Framework

When a person defaults on a loan owed to a federal agency, one way that federal law allows the agency to collect on that debt is through tax refund offsets.  31 U.S.C. § 3720A(a).  Debt collection through tax refund offsets is managed by Treasury through TOP.  *See* 31 C.F.R. § 285.5.  Prior to collection of a debt through TOP, the agency to which the debt is owed must, *inter alia*, notify the person of its intent to seek collection through a tax refund offset, provide at least sixty days to present evidence "that all or part of such debt is not past-due or not legally enforceable," and "consider[] any evidence presented by such person and determine[] that an amount of such debt is past due and legally enforceable."  31 U.S.C. § 3720A(b).  Treasury's regulations require that the agency certify that "[t]he debt is past-due and legally enforceable in the amount submitted" when it refers a debt to TOP.  31 C.F.R. § 285.2(d).  Treasury defines "legally enforceable" for purposes of TOP in the following manner:

> Legally enforceable refers to a characteristic of a debt and means there has been a final agency determination that the debt, in the amount stated, is due, and there are no legal bars to collection by offset.  Debts that are not legally enforceable for purposes of this section include, but are not limited to, debts subject to the automatic stay in bankruptcy proceedings or debts covered by a statute that prohibits collection of such debt by offset.  For example, if a delinquent debt is the subject of a pending administrative review process required by statute or regulation, and if collection action during the review process is prohibited, the debt is not considered legally enforceable for purposes of this section.  Nothing in this section

is intended to define whether a debt is legally enforceable for purposes other than offset under this section.

31 C.F.R. § 285.5(b).  The agency must recertify the debt at least annually as legally enforceable. *Id.* § 285.5(d).  Treasury's regulations do not specify what particular actions are required prior to an agency certifying a debt as legally enforceable.

Education also has regulations that govern collection of student loan debt through TOP. *See* 34 C.F.R. §§ 30.24, 30.33.  These regulations require the Secretary to give a debtor sixty-five days from the date notice is provided to the debtor of the Secretary's intent to use TOP to request a review of the existence, amount, enforceability, or past-due status of the debt.  34 C.F.R. § 30.33.  A request for review must include "the debtor's Social Security number" and "[a]n explanation of the reasons the debtor believes that the notice" provided is inaccurate.  34 C.F.R. § 30.24.  Relatedly, federal law requires that the Secretary "specify in regulations which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment of a loan."  20 U.S.C. § 1087e(h).  In fulfilment of this duty, a separate portion of Education's regulations allows borrowers[1] to assert a "borrower defense" to repayment based on "any act or omission of the school attended by the student that relates to the making of the loan for enrollment at the school . . . that would give rise to a cause of action against the school under applicable State law."  34 C.F.R. § 685.206(c)(1).  A borrower defense may be asserted both as "[a] defense to repayment" and as "[a] claim to recover amounts previously collected."  *Id.*  The Secretary has promulgated regulations that specify how a borrower may assert borrower defenses, including how such defenses can be asserted and considered as a group.  *See id.* § 685.222.

---

[1] The Court does not discern a meaningful difference between "debtor" and "borrower" in these different parts of the Code of Federal Regulations.

## B. Factual Background and Procedural History

For the purposes of considering Defendants' motion to dismiss, the Court accepts as true the factual allegations in Plaintiff's complaint, which she filed on June 18, 2019.  *See* Compl., ECF No. 1.[2]

Plaintiff attended MSB from approximately January 2009 until May 2011.  *Id.* ¶ 62.  To finance her education, she borrowed $23,500 in federal student loans.  *Id.* ¶ 63.  Plaintiff attended MSB to pursue a degree in criminal justice because she wanted to become a probation officer.  *Id.* ¶¶ 64–66.  An MSB representative had assured her "that upon graduation from the two-year program she could begin her career as a probation officer."  *Id.* ¶ 66 (internal quotations omitted).  After explaining to the representative that she wanted to transfer to another school at some point, she was falsely told that transferring credits would not be a problem.  *Id.* ¶ 67. Plaintiff has not completed her degree.  *Id.* ¶ 68.  After she was forced to suspend her studies due to her life circumstances, she resumed working as a waitress and bartender.  *Id.* ¶¶ 68–69. During this time, she struggled financially and eventually defaulted on her student loans.  *Id.* ¶¶ 69–70.

In 2016, the Minnesota Attorney General secured a judgment against MSB and an affiliated school for violation of state consumer fraud and deceptive trade practices laws.  *Id.* ¶ 51; *see also State v. Minnesota Sch. of Bus., Inc. (MSB)*, No. 27-CV-14-12558, 2016 WL 9709976 (Minn.Dist.Ct. Sep. 08, 2016).  The court's findings related specifically to MSB's

---

[2] Plaintiff's complaint includes allegations made on behalf of all others similarly situated. *See id.* ¶¶ 15–61, 79–87.  Her motion to certify the class, Pl.'s Mot. Certify Class, ECF No. 8, has not been fully briefed and has been stayed until fourteen days after a ruling on Defendants' motion to dismiss that does not wholly grant the motion.  *See* Min. Order (Sep. 27, 2019).  As such, for the purposes of this ruling, the Court only considers the factual allegations common to the class as they apply to Plaintiff.

criminal justice program and the unfounded representation that an associate degree would be sufficient to secure a job as a probation officer.  Compl. ¶ 52; *MSB*, 2016 WL 9709976, at *49. The court also made findings of fact about specific MSB students, including Plaintiff.  Compl. ¶ 53; *MSB*, 2016 WL 9709976, at *36–37 (factual findings about Plaintiff).

In December 2016, the Minnesota Attorney General sent a copy of the state court findings and judgment to Education.  Compl. ¶ 54.  Education relied on the state court decision when it denied recertification for MSB to participate in federal student aid programs under Title IV.  *Id.* ¶¶ 55–61.  Education "explicitly incorporated in its recertification denials the Minnesota District Court's factual findings about MSB's . . . misrepresentations to specific students who testified or submitted sworn affidavits, including [Plaintiff]."  *Id.* ¶ 61.

Although Education had knowledge of these findings, the Secretary certified Plaintiff's debt as "legally enforceable" and referred the loans for collection to TOP.  *Id.* ¶ 71.  Plaintiff alleges that, while she did receive notice of the Secretary's intent to use TOP, she was "unable to hire legal counsel to help her interpret the notice" of proposed tax refund offset.  *Id.* ¶ 72.  The notice, however, "did not specifically alert [Plaintiff] to the fact that she could dispute the proposed offset by raising a defense against repayment."  *Id.* ¶ 71.  She alleges that "TOP seized at least $1,906 of [her] 2017 state tax refund."  *Id.* ¶ 74.  Although Plaintiff has since "successfully rehabilitated her defaulted student loans," *id.* ¶ 76, she claims that her limited financial resources make it possible she will default again and that "she will not be able to get out of default through loan rehabilitation a second time," *id.* ¶ 77.  As of January 2019, she has $29,418 in outstanding student loan debt.  *Id.* ¶ 78.

Plaintiff's complaint raised one cause of action under the APA and another under the Due Process Clause of the Fifth Amendment.  With respect to the APA claim, Plaintiff argues that

"[i]n light of [Education's] actual knowledge of MSB's . . . illegal misconduct . . . Secretary DeVos'[s] and [Education's] final agency determination that [Plaintiff's] . . . student loan debt was legally enforceable is arbitrary and capricious." *Id.* ¶ 91.  Plaintiff's due process claim alleges that Education failed to provide notice about "the possibility of challenging the offset by asserting a defense to repayment."  *Id.* ¶ 96.  Furthermore, Plaintiff alleges the notice should have explained that MSB's misconduct rendered her debt not legally enforceable and that the Secretary has "general authority to compromise, cancel, or settle student loan debt."  *Id.*

Before the Court is Defendants' motion to dismiss.  Defs.' Mot. Dismiss, ECF No. 10; Defs.' Mem. Supp. Mot. Dismiss. ("Defs.' Mem."), ECF No. 10-1.  Defendants argue that Plaintiff has not alleged sufficient facts to state a claim under the APA or the Due Process Clause.  *See* Defs.' Mem. at 11–23.  In addition to her opposition, Pl.'s Opp'n Mot. Dismiss ("Pl.'s Opp'n"), ECF No. 13, Plaintiff has filed a motion asking the Court to take judicial notice of a letter sent by a group of senators to the Secretary that references "borrower defense group discharge application[s]" submitted by state attorneys general and the Secretary's reply.  *See* Pl.'s Mot. to Take Judicial Notice, ECF No. 12; Pl.'s Mot. to Take Judicial Notice Ex. A, ECF No. 12-2; Pl.'s Mot. to Take Judicial Notice Ex. B, ECF No. 12-3.  Plaintiff has also requested leave to file a surreply.  Pl.'s Mot. Leave to File Surreply, ECF No. 15; Proposed Surreply, ECF No. 15-1.[3]  All three motions are ripe for resolution.

---

[3] The Court grants Plaintiff leave to file and accepts Plaintiff's proposed surreply.  While surreplies are generally disfavored, a party may obtain leave to file by showing "that the reply filed by the moving party raised new arguments that were not included in the original motion." *Stanford v. Potomac Elec. Power Co.*, 394 F. Supp. 2d 81, 86 (D.D.C. 2005) (quoting *Longwood Vill. Rest., Ltd. v. Ashcroft*, 157 F. Supp. 2d 61, 68 n.3 (D.D.C. 2001)).  Plaintiff's proposed surreply addresses matters raised for the first time in Defendants' reply.  Therefore, the Court accepts as filed the proposed surreply.

## III.  LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests.  Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam).  A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a complaint" under that standard; it asks whether the plaintiff has properly stated a claim. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 550 U.S. at 555–56 (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss.  *Iqbal*, 556 U.S. at 678.  A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of legal conclusions that are couched as factual allegations, *see Twombly*, 550 U.S. at 555.  However, a court considering a motion to dismiss presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor.  *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).

## IV.  ANALYSIS

### A.  APA Claim

Under the APA, a plaintiff challenging agency action can prevail if a court finds that the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the

law." 5 U.S.C. § 706(2)(A).  This standard of review encourages courts to defer to the agency's

expertise.  *See Motor Vehicle Mfrs. Ass'n of U.S., Inc., v. State Farm Mut. Auto. Ins. Co.*, 463

U.S. 29, 43 (1983).  Agency action is arbitrary and capricious if

> the agency has relied on factors which Congress has not intended it to consider,
> entirely failed to consider an important aspect of the problem, offered an
> explanation for its decision that runs counter to the evidence before the agency, or
> is so implausible that it could not be ascribed to a difference in view or the product
> of agency expertise.

*Del. Riverkeeper Network v. FERC*, 753 F.3d 1304, 1313 (D.C. Cir. 2014) (quoting *State Farm*,

463 U.S. at 43).  Rather than resolving factual issues, the district court's role in reviewing agency

action "is to determine whether or not as a matter of law the evidence in the administrative

record permitted the agency to make the decision it did."  *Bates v. Donley*, 935 F. Supp. 2d 14,

22–23 (D.D.C. 2013) (quoting *Stuttering Found. of Am. v. Springer*, 498 F. Supp. 2d 203, 207

(D.D.C. 2007)).  To state a proper claim under the APA, a plaintiff must allege facts that, if true,

plausibly establish that the agency action is arbitrary and capricious.  *See James V. Hurson*

*Assocs., Inc. v. Glickman*, 229 F.3d 277, 284 (D.C. Cir. 2000); *Akpan v. Cissna*, 288 F. Supp. 3d

155, 165 (D.D.C. 2018); *XP Vehicles, Inc. v. Dep't of Energy*, 118 F. Supp. 3d 38, 78 (D.D.C.

2015).

Defendants argue that Plaintiff has not stated a proper claim under the APA.[4]  They say

that Plaintiff points to "no source of law that prohibits collection activity against a borrower

merely because the borrower attended a school that engaged in wrongdoing."  Defs.' Mem. at 13.

Defendants claim that because Plaintiff did not raise a borrower defense herself, their actual

---

[4] Defendants note that Plaintiff pled no facts suggesting that she was subject to wage garnishment, even though wage garnishment is discussed throughout the complaint.  Defs.' Mem. at 12.  Acknowledging this, Plaintiff withdrew her request for relief as it relates to wage garnishment.  Pl.'s Opp'n at 16 n.16.

knowledge of MSB's misconduct is irrelevant and cannot form the basis of an APA claim. *Id.* at 14. They state that until the Secretary determines that a borrower defense applies—only after a borrower has claimed the defense with the appropriate form—"the mere existence of evidence of a school's wrongdoing creates no particular "legal bar[] to collection by offset." *Id.* (quoting 31 C.F.R. § 285.5(b)). As such, Defendants claim, the agency can appropriately certify a debt as legally enforceable despite actual knowledge of a school's fraudulent activities. Defendants see Plaintiff's lawsuit as an attempt to impose an affirmative obligation to investigate whether a valid borrower defense might apply before certifying a debt for TOP—an obligation they claim would be too burdensome. *Id.* at 15. They state that "'federal law does not prohibit debt collection merely because the borrower may have an as yet unasserted defense against repayment' based on her school's misconduct." Defs.' Reply at 5 (quoting *Massachusetts v. United States Dep't of Education*, 340 F. Supp. 3d 7, 16 (D.D.C. 2018)), ECF No. 14. Based on this, Defendants argue that the Court need not review the full administrative record. *Id.* at 11–12. They say that to allow Plaintiff's claim to move forward, the Court must assume that their "knowledge of a school's wrongdoing renders the debts of all students who attended that school legally unenforceable under [Education's] borrower defense regulation" even if individual borrower defense applications have not been made and considered. *Id.* at 12. Because Defendants argue this legal theory is incorrect, the factual assertions in the complaint cannot form the basis of a valid claim; they state that "[i]t does not matter whether [Education] 'failed to consider' various evidence of MSB's wrongdoing before certifying the debt." *Id.* Defendants also suggest that because regulations require borrowers to submit borrower defense applications and Plaintiff has not, the Court should dismiss the claim based on her failure to exhaust administrative remedies. *Id.* at 16–17.

Plaintiff counters that dismissal of her APA claim without reviewing the administrative record would be premature.  Pl.'s Opp'n at 15.  According to Plaintiff, the "record will explain how [Education] considered the evidence in its possession when it certified Plaintiff's debt as legally enforceable." *Id.* at 16.  Plaintiff argues that the evidence in Defendants' possession— including the Minnesota state court findings about MSB and Plaintiff and "the pending group borrower defense claim on behalf of MSB" students[5]—renders the certification of her debt as legally enforceable arbitrary and capricious. *Id.* at 16–17.  Furthermore, because a certification of debt as legally enforceable is final agency action, and the statute allowing for TOP has no administrative exhaustion requirement, Plaintiff says the Court cannot dismiss the claim for failure to exhaust administrative remedies and should instead review the agency action. *See id.* at 13–14.

Because the statute authorizing TOP does not define "legally enforceable," the Court begins with the regulatory definition.  As noted above, Treasury's regulations define "legally enforceable" as "a characteristic of debt [that] means there has been a final agency determination that the debt, in the amount stated, is due, and there are no legal bars to collection by offset."  31 C.F.R. § 285.5(b).  Under this definition, the agency must first determine that the debt is due in the amount stated.  Plaintiff concedes that she defaulted on her loans, Compl. ¶ 69, and she does not appear to contest the amount of her debt.  As such, Plaintiff's challenge focuses on the second element of the definition that requires a determination that "there are no legal bars to collection by offset."  31 C.F.R. § 285.5(b).  The regulations state that a legal bar to collection might be an "automatic stay in bankruptcy proceedings" or a "pending administrative review

---

[5] The Court notes that, despite the arguments made in her briefing, Plaintiff does not mention a pending group borrower defense claim in her complaint.  This omission is discussed in further detail below.

process required by statute or regulation." *Id.*  Plaintiff does not allege in her complaint that her debt was subject to an automatic stay or that any administrative review process was pending when her debt was certified.  Instead, Plaintiff argues that Education's "actual knowledge of MSB's . . . illegal misconduct," Compl. ¶ 91, counts as a legal bar to collection for Plaintiff's debt.

Plaintiff's claim hinges on what the law requires Education to consider before certifying a debt as legally enforceable.  Plaintiff argues that the requirement that an agency must certify a debt as legally enforceable comes with an affirmative duty to "appl[y] the evidence it already had . . . and consult[] several sources of law to determine" whether a loan is legally enforceable. Pl.'s Opp'n at 18.  But the examples provided in Treasury's regulations about what constitutes a legal bar to collection—bankruptcy proceedings or a pending administrative review process—do not suggest that the agency bears such an affirmative duty to evaluate all evidence in its possession.  Instead, the examples suggest that agencies should not certify a debt for TOP where another proceeding remains pending regarding the debt's enforceability or where such a proceeding has concluded that the debt is not legally enforceable.  *See* 31 C.F.R. § 285.5(b).

Indeed, one such example of a bar to collection would be the presence of a borrower defense application—something Plaintiff concededly never submitted.  Under Education's regulations, if a borrower is in default on a loan for which she has asserted a borrower defense, Education "[s]uspends collection activity on the loan until the Secretary issues a decision on the borrower's claim."  34 C.F.R. 685.222(e)(2)(ii).  The suspension in collection efforts also occurs when a group borrower defense application is under consideration.  *See* 34 C.F.R. 685.222(f)(2)(iii) (explaining that if group members have not filed an individual application, the Secretary follows the procedures in paragraph (e)(2) of this section).  Given this language, a

borrower defense application appears to be exactly the type of "pending administrative review process required by statute or regulation" where "collection action during the review process is prohibited" contemplated by Treasury's regulations.  31 C.F.R. § 285.5(b).[6]  But Plaintiff does not allege in her complaint that she submitted a borrower defense application or that a group borrower defense application was submitted on her behalf.

Plaintiff does not point to any statutory or regulatory language to support her argument that certification of debt requires a general review of all evidence that the agency knows about. Instead, Plaintiff reads this affirmative duty into Treasury's regulation.  *See* Pl.'s Opp'n at 17–18.  Plaintiff maintains that Treasury's regulations prohibit collection activity when Education "knows about specific wrongdoing engaged in by a specific school" and when the agency "knows about specific students who were victims of that misconduct."  *Id.* at 17.  According to Plaintiff, Education cannot "ignore its *actual* knowledge—whether from a state court judgment, its own internal investigations, or otherwise."  *Id.*  But Plaintiff points to no statutory or regulatory framework that requires such a sweeping review of all evidence in the agency's possession prior to certifying an individual's debt for collection.  Instead, Plaintiff asks the Court to infer this framework from Treasury's regulation that says a debt is legally enforceable when there are no "legal bars to collection by offset."  31 C.F.R. § 285.5(b).  The Court declines to infer such an expansive affirmative duty—especially given that the provided examples of "legal bars to collection" in Treasury's regulation do not suggest that such an expansive investigation is

---

[6] Before the current regulations went into effect in 2018, Education's regulations did not contain the same language prohibiting collection action during the review of a borrower defense application.  *See* 34 C.F.R. § 685.206(c).  Even absent that language, however, a pending borrower defense application may still serve as a legal bar to collection by offset.  *See Vara v. DeVos*, No. 19-12175-LTS, 2020 WL 3489679, at *2–4 (D. Mass. June 25, 2020) (explaining how the regulatory scheme prior to 2018 required the Secretary to adjudicate borrower defenses to repayment).

required.  *See* 31 C.F.R. § 285.5(b); *see also Red River Farms v. United States*, No. CV 08-2078-PHX-NVW, 2009 WL 2983195, at *4 (D. Ariz. Sept. 17, 2009) (finding that no limitations period applies to collection by offset because "the 'legal bars' language refers to other prohibitions on collection through offset, such as 'debts subject to the automatic stay in bankruptcy proceedings or debts covered by a statute that prohibits collection of such debt by offset.'") (quoting 31 C.F.R. § 285.5(b)); *Kipple v. United States*, 105 Fed. Cl. 651, 657 (2012) (finding that the "legally enforceable" definition of § 285.5 "focus[es] the agency's inquiry on whether some legal bar such as an automatic stay in a bankruptcy proceeding precludes collection").

The reasoning in *Massachusetts v. United States Dep't of Education* supports a rejection of Plaintiff's theory.  There, a court in this District considered a challenge similar to Plaintiff's but brought by state attorneys general on behalf of their constituents.  *See Massachusetts*, 340 F. Supp. 3d at 9–10.  The states argued that debts incurred by students who attended schools that engaged in fraudulent activities were not legally enforceable for purposes of TOP.  *Id.*  The states sought to prevent further collection efforts "against all potentially defrauded borrowers," not just those who had asserted borrower defenses.  *Id.* at 11.  The court ultimately concluded that the states lacked standing.  *Id.* at 18.  In its discussion of *paren patriae* standing, the court found that the federal government's collection efforts did not appear to be contrary to any federal law.  The court stated:

> [F]ederal law does not prohibit debt collection merely because the borrower may have an as yet unasserted defense against repayment.  Indeed, the law embodying Congressional intent appears to *require* the Department to continue its attempts to collect such debt . . . Thus, the executive action being challenged here fits squarely within federal law.

*Id.* at 16 (emphasis in original) (citations omitted).  The court concluded that the applicable federal statutes and regulations do not require Education to affirmatively determine, based on all information known to the agency, whether an individual borrower might have a valid borrower defense—this Court concludes the same.

This conclusion is fortified by observing other regulations that *do* require more affirmative action on Education's part.  The Secretary is required to discharge a borrower's obligation to repay a student loan "if a school falsely certifies the eligibility of the borrower (or the student on whose behalf a parent borrowed) to receive the proceeds" of a federal student loan.  34 C.F.R. § 685.215(a)(1).  Like borrower defenses to repayments, the Secretary determines whether a borrower is eligible for discharge based on a false certification upon application submitted by the borrower.  *See id.* § 685.215(c).  Unlike borrower defenses to repayments, if the Secretary determines that a borrower "*may* be eligible for a discharge" based on false certification, the Secretary "provides the borrower an application and an explanation of the qualifications and procedures for obtaining a discharge."  *Id.* § 685.215(d)(1) (emphasis added).  Additionally, if the Secretary determines that a borrower "*may* be eligible for a discharge" based on false certification, the Secretary "promptly suspends any efforts to collect from the borrower on any affected loan."  *Id.*  (emphasis added).  In other words, if the Secretary has information that suggests eligibility for such a discharge—even if that information does not come from an application for discharge—the borrower is made aware, provided an application, and collection activities stop.

Based on this language, courts have held that Education must proactively suspend collection efforts when the agency knows about potential false certifications.  In *Salazar v. King*, the Second Circuit found that the regulatory language noted above requires Education "to

consider information available from guaranty agencies,[7] the Secretary's records, state authorities, and accrediting associations." 822 F.3d 61, 79 (2d Cir. 2016).  Similar to Plaintiff here, the class members in *Salazar* alleged that Education had knowledge of a particular school falsely certifying students as eligible for student loans.  *See id.* at 71.  Despite this knowledge, Education did not cease collection efforts—action that the class members claimed, just as Plaintiff does here, amounted to arbitrary and capricious agency action.  *See id.*  Unlike Plaintiff, however, the class members in *Salazar* could point to "the mandatory direction of the statute and regulations to suspend [collection] and notify" borrowers of their potential eligibility for discharge.  *Id.* at 82.  The Court has not found, and Plaintiff has not highlighted, any source of law that amounts to a similar "mandatory direction" on the facts alleged here.

Perhaps sensing weakness in her position outlined in the complaint, Plaintiff bolsters her argument in opposition to the motion to dismiss by claiming that Education had, and failed to consider, a group borrower defense application applicable to MSB students.  *See* Pl.'s Opp'n at 10, 11–12, 15–20.  This allegation is not included in the complaint.  As such, Plaintiff's arguments about Education's failure to consider the pending group borrower defense application do not support her overall position that her complaint states a plausible claim.  While the existence of a group borrower defense application may change the calculus—the Court takes no position on this point at present—the Court only considers whether the factual allegations made in the complaint, not those made in briefing, state a plausible claim.  *See Twombly*, 550 U.S. at 555–56.

---

[7] A guaranty agency is a "State or private nonprofit organization that has an agreement with the Secretary under which it will administer a loan guarantee program."  34 C.F.R. § 682.200.

Plaintiff points to two cases recently decided in the District of Massachusetts to support her argument, but these cases are distinguishable in an important way—they involved an actual group borrower defense application.  In *Williams v. DeVos*, the court considered claims that the Secretary "improperly certified the student loan debts of plaintiffs . . . as legally enforceable for purposes of referral to the U.S. Department of Treasury's Treasury Offset Program."  No. CV 16-11949-LTS, 2018 WL 5281741, at *1 (D. Mass. Oct. 24, 2018).  The plaintiffs in *Williams* were students who took out federal student loans to attend a school that had engaged in deceptive conduct in violation of Massachusetts state law.  *See id.* at *3.  In contrast to the current case, the court had before it a submission the state attorney general had made to Education that requested discharge of the student loan obligations for students who attended the school in question.  *Id.* at *1.  Specifically, the submission contained a request for "the immediate discharge of federal student loans taken in connection with [the school], full refunds to borrowers of amounts paid on the loans and the reversal of negative credit reporting."  *Id.* at *4 (quotations omitted).  The state attorney general submission in *Williams* also included details regarding specific students and a list of deceptive practices that influenced the students to attend. *See id.* at *4.  Even though the submission lacked some qualities of a formal borrower defense application, the court found it "was sufficient to require the Secretary to determine the validity of the plaintiffs' borrower defense."  *Id.* at *12.  The court concluded that Education acted arbitrarily and capriciously by refusing to consider the attorney general's submission prior to certifying the plaintiffs' debts for tax refund offsets.  *Id.* at *14.

In *Vara v. DeVos*, which Plaintiff cites in a Notice of Supplemental Authority, ECF No. 16, the same District of Massachusetts court took the analysis of the same essential facts one step further.  No. CV 19-12175-LTS, 2020 WL 3489679 (D. Mass. June 25, 2020).  The court

concluded that the same attorney general's submission described in *Williams* "was a valid borrower defense application on behalf of all individuals who took out federal student loans" to pay for attendance at the university at issue, that the Secretary constructively denied the borrower defense application by not rendering a reasoned decision, and that plaintiffs (a class of all students mentioned in the attorney general's submission) had "established that they are entitled full loan discharges and a favorable borrower defense decision." *Id.* at *34.

The existence of a group borrower defense application was central to both holdings. *See Williams*, 2018 WL 5281741, at *12 ("The language of the [attorney general's] submission itself requested the application of the borrower defense on behalf of [the plaintiffs]"); *Vara*, 2020 WL 3489679, at *29 (finding that the attorney general's submission "invoked a borrower defense proceeding on behalf of the people listed" in the submission). As such, neither decision had occasion to adopt, or even consider, Plaintiff's theory that Education has an affirmative duty to investigate whether a borrower might have a valid defense to repayment—absent a pending borrower defense application—prior to certifying the debt for collection. While they may serve as persuasive authority where an actual borrower defense application remains pending, these decisions are not applicable to the facts alleged in Plaintiff's complaint.

Because the regulatory language does not support the broad affirmative duty that Plaintiff argues should apply, the Court agrees with Defendants and will grant their motion to dismiss. However, given the additional factual allegations made in Plaintiff's opposition to the motion, and Plaintiff's motion to take judicial notice,[8] the Court will allow Plaintiff to amend her complaint.

---

[8] Because consideration of the materials attached to the motion to take judicial notice are unnecessary to support the Court's conclusion that Plaintiff fails to state a claim, the Court denies the motion as moot.

### B.  Due Process Claim

"To succeed on a due process claim, a plaintiff must show that there was a cognizable liberty or property interest at stake."  *Smirnov v. Clinton*, 806 F. Supp. 2d 1, 12 (D.D.C. 2011) (citing *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)).  If a cognizable liberty or property interest is at stake, due process requires only "a meaningful opportunity to present" a case. *Mathews*, 424 U.S. at 349.  To determine what procedural process is due, courts balance: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews*, 424 U.S. at 335.  For purposes of due process, adequate notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Bliek v. Palmer*, 102 F.3d 1472, 1475 (8th Cir. 1997) (citing *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

Defendants argue that Plaintiff's due process claim should be dismissed because the complaint shows that Education followed the procedures required by statute and regulation and because other courts have held these procedures satisfy the requirements of due process.  *See* Defs.' Mem. at 19–20 (listing cases).  Plaintiff responds that none of these cases "address the specific adequacy argument at issue here: whether the notice of proposed TOP offset must include a reference to borrower defenses to repayment."  Pl.'s Opp'n at 23.  Relying on the Supreme Court's decision in *Memphis Light* and cases from the Eighth and Third Circuits, Plaintiff argues that Education's "failure to include notice about borrower defenses to repayment

is, by itself, sufficient to state a procedural due process claim." *Id.* at 22 (citing *Memphis Light, Gas, & Water Div. v. Craft*, 436 U.S. 1, 14–15 (1978); *Bliek*, 102 F.3d at 1476; *Finberg v. Sullivan*, 634 F.2d 50, 62 (3d Cir. 1980) (en banc)).  Plaintiff also argues that the *Mathews* framework supports the claim that TOP notices should include references to available borrower defenses.  *Id.* at 24–25.

Based on the facts alleged in the complaint, Plaintiff received a notice that satisfies constitutional due process requirements.[9]  Under Education's regulations, a notice of proposed offset includes the amount of debt owed, a statement of the Secretary's intent to refer the debt for offset, and an explanation of the process the debtor may use to review the status of the debt.  34 C.F.R. § 30.33(b).  Specifically, the notice informs the debtor that he or she may "[i]nspect and copy Department records regarding the existence, amount, enforceability, or past-due status of the debt," "[o]btain a review within the Department of the existence, amount, enforceability, or past-due status of the debt," and "[e]nter into a written agreement with the Secretary to repay the debt."  *Id.* § 30.33(b)(3).  Such notice makes clear that the agency intends to collect on the debt and that the debtor may first obtain a review of the underlying basis for collection or, alternatively, settle the debt via written agreement.  That Plaintiff failed to avail herself of this process does not render the notice provided constitutionally defective.  *See English v. District of Columbia*, 717 F.3d 968, 974 (D.C. Cir. 2013) ("Appellant's failure to initiate the required proceeding is his alone."); *see also Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) ("If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants.").

---

[9] The Court assumes that Plaintiff's interest in her tax refund is a cognizable property interest to which due process protections attach.

The Court finds that Plaintiff has failed to state a plausible due process claim.  Plaintiff does not contest that she received notice of the Secretary's intent to collect on her debt through TOP.  Compl. ¶ 71.  She does not allege that the notice failed to adhere to the requirements outlined by statute or Treasury's regulations.  She acknowledges that she was given the opportunity to, and did not, request a pre-deprivation hearing to challenge the validity of her debt.  Pl.'s Opp'n at 11; Compl. ¶ 72.  Numerous courts have found that the exact procedure challenged here satisfies constitutional due process requirements.  *See, e.g.*, *Omegbu v. U.S. Dep't of Treasury*, 118 F. App'x 989, 991 (7th Cir. 2004); *Hackworth v. Kansas City Veterans Admin. Med. Ctr.*, No. 6:13-CV-03363-MDH, 2015 WL 506245, at *6 (W.D. Mo. Feb. 6, 2015) (stating that "every decision reviewed by this Court considering the issue presented has found that TOP satisfies procedural due process under the Fifth Amendment."); *Shlikas v. Dep't of Educ.*, No. WDQ-09-2806, 2013 WL 2149752, at *6 (D. Md. May 15, 2013) ("[C]ompliance with TOP statutes and regulations governing offsets satisfies procedural due process."); *United States v. Beulke*, 892 F. Supp. 2d 1176, 1187 (D.S.D. 2012) ("The extensive regulatory framework governing the TOP provide ample guidance for federal agencies to . . . protect a debtor's due process."); *McCarty v. Astrue*, 505 F. Supp. 2d 624, 632 (N.D. Cal. 2007).  While Plaintiff's position may make for better policy, the constitution requires only "a meaningful opportunity to present" a case.  *Mathews*, 424 U.S. at 349; *see also English v. District of Columbia.*, 815 F. Supp. 2d 254, 264 (D.D.C. 2011), *aff'd*, 717 F.3d 968 (D.C. Cir. 2013) ("[P]laintiff is not entitled to perfect procedure or the procedures of his choice.") (quoting *Bagenstose v. District of Columbia*, 503 F. Supp. 2d 247, 257 (D.D.C. 2007)).  The notice she received admittedly allowed her to contest the collection efforts and request a hearing; that the

notice did not specifically include the availability of a borrower defense does not make it constitutionally deficient.[10]

The cases cited by Plaintiff do not compel an opposite result.  In *Memphis Light, Gas and Water Division v. Craft*, the Supreme Court found that notice that "does not advise . . . of the availability of a procedure for protesting a proposed termination of utility service" does not satisfy due process.  436 U.S. 1, 15 (1978).  But Plaintiff here was made aware of the procedures available to her.  *See Brown v. District of Columbia*, 115 F. Supp. 3d 56, 70 (D.D.C. 2015) ("*Memphis Light* thus requires the government to make known any procedures for challenging the deprivation of a private interest that are not codified or otherwise public[ly] available.").  The two out of Circuit cases cited by Plaintiff also do not support her position.  In *Bliek v. Palmer*, the Eighth Circuit found that a notice provision that gave "the impression to the plaintiffs . . . that they have no alternative but to agree to reduce their future allotment of food stamps" failed to adequately inform plaintiffs of the available procedures.  102 F.3d 1472, 1476 (8th Cir. 1997).  The court described the demand letter at issue as "complex, confusing, and prolix."  *Id.* 1476 n.5. Plaintiff here does not allege that the notice provided was inadequate in such a manner, nor that the notice provision failed to alert her that she could request a hearing to contest collection.  In *Finberg v. Sullivan*, the Third Circuit found that a notice provision should have informed the plaintiff about the applicability of certain exemptions to wage garnishment in part because "[k]nowledge of these exemptions is not widespread."  634 F.2d 50, 62 (3d Cir. 1980).  Here, information about borrower defenses is included in the Master Promissory Note signed by student borrowers.  Moreover, requiring the agency to inform a debtor of all possible defenses to

---

[10] As Defendants point out, Plaintiff did have notice of the availability of a borrower defense to repayment through the Master Promissory Note signed when she obtained the loans. *See* Defs.' Mem. at 22.

collection that are not widely known is potentially limitless.  The Constitution does not require such a result.

In short, these cases are distinguishable from the facts alleged in Plaintiff's complaint. They do not suggest that the process Plaintiff received was constitutionally deficient simply because the notice provided did not contain the particular language plaintiff prefers. Accordingly, the Court finds that the complaint fails to allege a plausible due process claim.

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 10) is **GRANTED**. Plaintiff's Motion to Take Judicial Notice (ECF No. 12) is **DENIED AS MOOT**.  Plaintiff's Motion for Leave to File Surreply (ECF No. 15) is **GRANTED**.  Plaintiff shall have thirty days to file an amended complaint.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  September 22, 2020                                                    RUDOLPH CONTRERAS
                                                                                            United States District Judge